HIRAM K. HUNT *v.* THURMAN & MARTIN.

Hunt
*v.*
Thurman &
Martin.

H. contracted with T. & M. to deliver, at a certain place, from 300 to 1000 cords of wood, before a certain time specified in the contract. *Held*, that the delivery by H. of not less than 300 nor more than 1000 cords, at divers times, between the date of the contract, and the time specified therein, vested the property of the wood, thus delivered, in T. &. M., so as to make its destruction their loss.

The place of delivery, in such case, may be varied, by parol agreement, without otherwise affecting the contract.

THIS was an action of book account. Judgment to account was rendered, and auditors were appointed.

The auditors reported that the parties had appeared before them, and the plaintiff presented an account against the defendant amounting to $1551.24, which they set forth in their report, and which embraced 762½ cords of wood. They also reported that the defendants presented an account against the plaintiff amounting to $1221.81, which was not objected to.

They further reported that the plaintiff presented the following memorandum of an agreement:

"Whitehall, Oct. 9, 1839.

"Mr. H. K. Hunt is to deliver on Gibbs & Byram's dock, next winter, from 300 to 1000 cords of wood—one half or more to be hemlock, and the other basswood and white pine and hard wood, to be delivered before the first of July, 1840, at two dollars per cord.

(Signed)          THURMAN & MARTIN,
H. K. HUNT."

The auditors reported, further, as follows:

"On the trial before the auditors, it appeared that the defendants contracted with the plaintiff for the wood in question, as per written contract, with a view of selling the same to the steam-boat company, and did so sell the same. To prevent any loss in the measurement of the wood, the defendants wished to have it measured by the agents of the company, that it might be received by the company at their measure. It did not appear that the plaintiff ever agreed to any such arrangement. But it appeared that, about the last of April, the plaintiff applied to the defendants to measure the wood, when they told him that Capt. Boardman, who was the agent for the steam-boat company, would measure

it, and the plaintiff then applied to Boardman a number of times, to measure the wood. Boardman measured the wood on the 3d day of July, 1840, but did not measure it on the last of April or first of May, when applied to by the plaintiff, the water then being so high as to render it inconvenient.

RUTLAND.
February, 1843.

Hunt
v.
Thurman & Martin.

It also appeared that, after the written agreement was made, it was ascertained that the steam-boat did not stop at Byram's dock, and the defendants desired the plaintiff not to deliver any of the wood at that dock. It also appeared that Gibbs' wharf was sufficient to hold but a small part of the wood, and that Gibbs would not consent to have it used for that purpose ; that the wood was piled immediately south of Gibbs' wharf, upon the lake shore, at about high water mark, and as near to the dock as they could get it ; that this was ground on which it was customary to pile wood designed for market, and on which Gibbs directed the plaintiff to pile the wood in question ; that Thurman, one of the defendants, was there twice previous to the middle of February, at which time a large portion of the wood had been drawn ; and that he examined the wood, and found no fault with the place where, or the manner in which, it was piled. On the 11th day of May, 1840, one of Hunt's hands called on the defendants to know where to pile wood, and they directed him to call on Gibbs, and pile it where he should direct. It appeared that in May, after some of the wood had been carried off by the water, the plaintiff called on the defendants to know where to pile a part of the wood not then delivered; and that Martin, one of the defendants, told him to have it measured in the boat, and then throw it over the pile on the shore, and if it went off he would lose it.

It further appeared that, during the spring, the water in the lake rose to an uncommon height, and about 142¾ cords of the wood in question were carried off ; and that it would have been safe had not the water risen considerably higher than usual.

The wood in question was delivered by the plaintiff, as before stated, in pursuance of the aforesaid *written* contract dated Oct. 9, 1839. Most of it was delivered by individuals with whom the plaintiffs had made contract for that purpose ; and they had procured the wood to be measured from them to the plaintiff ; but otherwise it was not measured by the

Rutland,
February,
1843.

Hunt
v.
Thurman &
Martin.

plaintiff, nor any one else, till it was measured by Captain Boardman, on the 3d of July, 1840, excepting what was measured by Gibbs and what was delivered at Whitehall, which was previous to that time.

If, from the foregoing facts, the court should be of opinion that the plaintiff ought to recover, we find due him the sum of two hundred and sixty-seven dollars and eighty-nine cents. But, on the contrary, should the court be of opinion that the title to the wood remained in the plaintiff till it was measured off to the defendants, and did not vest in the defendants as it was delivered and piled as aforesaid, then we report a balance in favor of the defendants against the plaintiff of the sum of thirty-nine dollars and ninety-one cents."

Upon the coming in of this report, the defendants excepted to the same, " for that the auditors have allowed to the ʻ plaintiff for a large quantity of wood which was piled by ʻ him upon the beach near Gibbs' dock, in the winter of ʻ 1839–40, with an intention, on his part, to deliver it to the ʻ defendants upon a written contract, which, by said contract, ʻ was to have been delivered on Byram & Gibbs' dock, by ʻ the 1st of July, 1840, but which was carried off by the ʻ freshet, and lost, about the 11th of May, 1840, and before ʻ it had been measured, or in any way delivered by the ʻ plaintiff to the defendants."

The county court overruled the exceptions, and rendered judgment for the plaintiff; — to which decision the defendants excepted.

*R. R. Thrall* and *J. Collamer*, for defendants.

There are, at common law, three, and, in this state, four different forms of action by vendor against vendee of goods. 1. Special assumpsit on the contract to purchase. 2. An action for goods bargained and sold. 3. An action for goods sold and delivered. 4. An action on book for the goods sold and delivered. These are not concurrent actions, except the two last; which are so. They are actions adapted to the different state of circumstances which may exist between vendor and vendee.

The action on book, for personal property, can only be sustained when the article has been actually *delivered ;* that is, only when the property therein, has entirely vested in the

RUTLAND,
February,
1843.

Hunt
v.
Thurman &
Martin.

vendee, and the vendor has no further possession, dominion, or control of the same. That makes the action of book, as to personal property, concurrent with assumpsit for goods sold and delivered, and with that only. This was settled in this state, in the case of *Reed* v. *Barlow*, 1 Aik. 145, and has never since been shaken, or even qualified, but often confirmed.

The *delivery* must be at the proper time and place ; and if anything yet remains to be done in relation to the property, by the vendor, or by both parties, it is not delivered, does not vest, and is at the risk of the vendor. If the goods are yet to be measured or weighed they are not delivered. *Zagury* v. *Furnell*, 2 Camp. 240 ; 11 East R. 210 ; 5 Taunt. 617 ; 2 M. & Sel. 397 ; 1 Swift's Dig. 277, 379 ; 2 Kent's Com. 390 ; Chit. on Con. 299 ; 15 Johns. R. 349.

If the vendor so retains the goods in his possession as to retain his lien for pay therefor, he has not *delivered* the goods, and cannot sustain an action for goods sold and delivered. *Baldy* v. *Parker*, 2 Barn. & Cres. 37 ; *Carter* v. *Touissant*, 5 Barn. & Ald. 855 ; 7 C. L. R. 280 ; 3 Stark. Ev. 1619, n.

No act of the plaintiff could have vested the property in the defendants, without their consent until the 30th day of June—the last day named in the contract for the delivery. 1 Swift's Dig. 293. In this case the wood was not *delivered*, as it remained, unmeasured, until the 3d day of July. Until that time it was the property of the plaintiff. The defendants could not have justified the taking it, or any part of it. The plaintiff was under no obligation to deliver more than 300 cords, and had until July to do that. How much, and what part, he would conclude to deliver, the defendants could not tell, and therefore, they could take none.

The plaintiff held possession so that he had a lien for his pay, and had the defendants become bankrupt before July, their assignee could not have held the wood, nor was it so the defendants', until July, that their creditors could have attached it.

II. The action for goods *bargained and sold*, lies, when there is a sufficient contract of sale to vest the title to the property of the goods in the vendee, and the right to the pay in the vendor, but there has been no delivery. 3 Stark. Ev. 1624 ; *Smith* v. *Chance*, 2 B. & Ald. 758. Many such cases

Rutland,
February,
1843.

Hunt
v.
Thurman &
Martin.

might be named ; and it would seem, this action may be sus-tained, when the vendor has fully performed on his part, but the vendee has failed, even if the vendor has resold the goods.

In this case, if the defendants were bound to receive and pay for the wood before July (of which there may be much doubt) if the defendants had neglected or refused, on rea-sonable application, to attend to the measure of the wood or to receive it, the plaintiff might have had the same measur-ed ; and then, if the defendants would not receive the same, he might have sustained his action for goods bargained and sold. But he did not do so. He made no such request. The defendants made no such neglect; and the plaintiffs made no such measure or tender.

III. The other form of action, by vendor against vendee, is a special action, for neglecting or refusing to receive the goods according to the contract, the vendor having fully per-formed on his part. In such case no property passes. There is no delivery, the vendor keeps the goods and recovers only the damages or loss, for the defendants' not performing. With this the action of book has no concurrence.

In the present case, if there was, by the contract, a duty on the defendants, to receive the delivery of this wood before July, and if the neglect of Boardman, to whom they referred to measure the wood, had not a sufficient excuse, and if, thereby, the plaintiff was deprived of his right of delivery, that did not make that a *delivery,* so as to sustain this suit. It only showed a breach of the defendants' contract to receive the wood, and would only sustain an action there-for. But it is insisted—1. That good excuse for not measuring the wood, then, fully appears. 2. If it did not, that did not prevent the plaintiff from measuring and deliv-ering the wood. 3. That he made no measure or delivery until July, and, of course, the property remained his, at the time of the loss. 4. That even if no excuse for not attending to the measure before the loss, appears, yet that did not make a delivery before, and, therefore, *this* action cannot be sustained for the wood that was lost while it was the plaintiff's property.

*E. N. Briggs,* for plaintiff.

This is an executory contract, in writing, signed by the

RUTLAND,
*February,*
1843.

Hunt
*v.*
Thurman &
Martin.

parties. It is for the delivery of property upon which something is to be done, to put it in a state in which it was contracted to be sold; and should be construed so as to give effect to the intentions of the parties.

1. At what time was the wood to be delivered, according to this contract? It was to be delivered " next winter," and delivered before the first of July, 1840. . Taking these two expressions together, they obviously mean, that the wood should be delivered, from time to time, during the winter, the usual time of procuring this article, but extending the time to, guard against accidents, to the 1st of July, 1840.

2. As to the place of delivery. The contract says that the wood is to be delivered on Gibbs & Byram's dock. This is to receive a construction from the nature of the transaction, and the acts of the parties. It was not the expectation of the parties that the wood would be delivered literally on the dock, but at the place of delivering such articles for storage near the dock. It is found, by the auditors, that the dock had not sufficient capacity to hold the wood; that the defendants altered the contract, or requested that no wood should be delivered at Byram's dock, and that the wood was piled adjoining to the dock, in the place used for the piling of wood and lumber. This may be considered as a part of the landing, or dock. The auditor also finds that Thurman, one of the defendants, after a large portion of the wood had been drawn, examined it and made no objections to the place or manner of piling. This was a virtual construction, of the contract on his part. The defendants received the wood *upon the contract at this place.*

It is an established rule, that where goods are sold, if nothing remains to be done on the part of the seller, as between him and the buyer, before the article is to be delivered, the property has passed. 6 East. 614; 4 Mass. R. 661. The measuring of the wood was not essential to the full delivery. The quantity was to be ascertained by the parties in some way, but the plaintiff could recover for no more than he delivered. The wood had been measured as delivered, by the persons delivering; and no question is now raised as to the quantity.

There was a sufficient delivery of the property to pass the title, and it might have been held upon an attachment against

RUTLAND,
February,
1843.

Hunt
v.
Thurman &
Martin.

defendants. But, in many cases where the delivery and change of possession might not be good, as to third persons, or attaching creditors, it would be good as between the parties, and make the risk of the property in the purchaser.

Where goods are contracted for, to be sent by some conveyance to the purchaser, a delivery to the carrier, ship, or other conveyance, is a delivery of the goods to the purchaser, and they are at the risk of the purchaser or consignee. *Whiting et al.* v. *Farrand*, 1 Conn. 60.

The vendor may have the right of stopping *in transitu.* Kent, in his Com. 2 vol. p. 496, says—When everything is done by the seller, even as to a parcel of the quantity sold, to put the goods in a deliverable state, the property, and consequently the risk, pass to the buyer. In many cases no delivery is necessary to complete a sale. When the terms of sale are agreed upon, and the bargain is struck, and every thing which the seller has to do with the goods is completed, the contract of sale becomes absolute, without actual payment or delivery, and the property, and the risk of accident vest in the buyer.

The opinion of the court was delivered by

HEBARD, J.—From the contract, under which the wood in question was delivered, it appears that the quantity to be delivered, except as limited by a minimum and maximum, is not expressed ;—that the *time* of delivery, is all the time between the date of the contract and the first day of July after, —and the *place* of delivery, on Gibbs & Byram's dock ; and the kind and quality of the wood is expressed in the same general terms. *The question is, whether there was such a delivery of the wood that was carried off by the flood, as to vest the property in the defendants, and entitle the plaintiff to recover the pay for it ?* If the plaintiff has done every thing agreeably to the terms of the contract, there can be no doubt of this, unless the parties have, in some way, varied or enlarged the contract, subsequent to its inception ; and this is not shown to have been done, so far as the simple fact of a delivery is concerned.

It appears from the auditors' report, that the *place* of delivery was varied, by mutual consent of the parties, as to a part of the wood. This is different from a contract to de-

RUTLAND,
*February,*
1843.

Hunt
*v.*
Thurman &
Martin.

liver a certain specified amount, or value, of specific articles, in payment of an antecedent debt. In that case, the whole amount due must be delivered on the farthest day named. In this case, two things are to be noticed; first, the quantity of wood is such as to render it impossible that the whole should be delivered in one day; the other is, that the phraseology of the contract is such as to imply that it was to be delivered on different days,—and the ultimate quantity was not specified—only the largest and smallest quantities. The expression in the contract is not, on or before a certain day, nor on a certain day,—but it is to be delivered before the first day of July. Whatever wood was delivered agreeably to the contract, became the property of the defendants; and the plaintiff had no right, afterwards, to take it away.

The defendants, to some degree, assented to what was done. One of them was present when some of the wood was delivered, and assented to the place of depositing it.

The case of *Zagury* v. *Furnell et al.* 2 Camp. 240, is cited by defendants to sustain their objection, for want of a delivery. The governing principles in the two cases, are not similar. The question of delivery is a question of fact, and must, of necessity, be governed, in a great measure, by the nature of the transaction, and the nature and circumstances of the property to be delivered. This wood, by the written contract, was to be delivered on Gibbs & Byram's dock; but the parties, afterwards, varied this part of the contract, by parol. In other respects, it is evident they intended to be governed by the written contract; and the auditors have found the fact, that the wood was delivered according to that contract.

In the case of the goat skins, in the case referred to, there was no delivery, and nothing that the parties talked about as a delivery. They talked about a sale of the skins; but the case finds that the usage of trade was to count them over, and the duty of the seller to do so, to see whether the bales contained the number specified in the contract; and before any of the skins had been counted, the whole were destroyed by fire, at the wharf where they lay, at the time of the sale. The buyer had never received them. They had not been moved, after the sale, and were not placed where they were, by any consent or agreement of the buyer; nor was

the *place* of delivery any part of the contract of sale. In all these particulars, it varies from the present case. The wood had been delivered at the stipulated place, within the time agreed upon, subject to the defendants' convenience; and would have been measured but for the neglect of the defendants.

The plaintiff applied to the defendants to measure the wood, and they told him that Boardman would measure it; and he called upon Boardman, a number of times, but he neglected to do it, till after the wood was carried off.

We, therefore, think that the plaintiff had done all that he could do, and all he was bound to do, to fulfil his contract.

The judgment of the county court is affirmed.