PEELLE COMPANY, A CORPORATION, PLAINTIFF-RE-SPONDENT, v. INDUSTRIAL PLANT CORPORATION, A CORPORATION, DEFENDANT-APPELLANT.

Submitted January 18, 1938—Decided July 22, 1938.

Before Brogan, Chief Justice, and Justices Trenchard and Parker.

For the defendant-appellant, *McDermott, Enright & Carpenter* (*James D. Carpenter, Jr.,* of counsel).

For the plaintiff-respondent, *Thomas B. Davidson.*

The opinion of the court was delivered by

Trenchard, J. This is the appeal of the defendant below in an action in replevin from a judgment entered upon plaintiff's verdict against defendant.

The evidence was in many essential respects in sharp conflict, but it nevertheless justified the jury in finding, if they saw fit, the following matters of fact among others:

On December 7th, 1934, the plaintiff, Peelle Company, a corporation, bought a locomotive from one Murray E. Baker, trading as Baker Machine and Supply Company, and received from Baker a bill of sale therefor. The locomotive weighed sixteen tons and runs only on rails as any other locomotive, but, at the time of the purchase, it was in need of repairs. The bill of sale specified that the price was $525 and that certain stated repairs would be made by Baker, and called for delivery at plaintiff's yard in New York City. At the time of the sale, the locomotive was in the storage warehouse of one Schoonmaker in Jersey City, but no warehouseman's receipt or other evidence of ownership thereof had ever been issued against it. Shortly after the sale, because of weather conditions, Peelle Company decided to and did leave the locomotive where it was in Schoonmaker's warehouse in order that necessary repairs might be made to it while in storage in the warehouse, and this decision was made with the full knowledge and consent of Baker, who told Schoonmaker of the sale to Peelle Company and of the repairs which they were to make. Between December 7th, 1934, and March 1st, 1935, payments were made by Peelle Company to Baker on account of the purchase price of the locomotive, the last check for $150, which was dated March 1st, 1935, stated that the sale was "in settlement of final payment $150.00 invoice 12/7/34." At such settlement $55 was allowed on account of the purchase price for repairs which Baker was to have

made, but failed to make, and which were made by Peelle Company by arrangement with Baker. Still another adjustment was an allowance of $25 by Peelle Company to Baker for storage of the locomotive for the time the repairs were being made. On March 9th, 1935, after all repairs had been made by Peelle Company, Baker, without the consent or knowledge of Peelle Company removed the locomotive from Schoonmaker's warehouse and delivered it to the defendant, Industrial Plant Corporation, at the plant of the Lincoln Terminal Company, at Kearny, New Jersey. Immediately thereafter this replevin suit was instituted by Peelle Company, against the Industrial Plant Corporation for possession of the locomotive.

In our view the only ground of appeal requiring consideration is this: "Because the trial court erroneously refused to grant a motion of the defendant for the direction of a verdict in favor of said defendant and against the plaintiff Peelle Company."

Point "I" of appellant's brief denies that the locomotive was in the possession of the plaintiff. Point "II" argues that section 43, subdivision 3 of the Sale of Goods act (4 *Comp. Stat., p.* 4657) does not apply because the chattel was not in the possession of a third person (in this case Schoonmaker). Lastly, appellant's point "III" claims that section 25 of the Sale of Goods act does apply on the theory that the locomotive was in the possession of Baker. It is apparent, therefore, that appellant's arguments are all based on the one question of possession and that we must determine the answer to that question.

Of course, whoever has the legal title to chattels and the right to their possession may maintain replevin to recover their possession.

The right of possession follows the title and, since the appellant concedes in point "I" of its brief that title was transferred at the time of the sale by Baker to Peelle Company, it would seem to follow that Baker had no right of possession.

The evidence tended to show that at the time of sale, and while the repairs were being made by Peelle Company, and

up to the time that the locomotive was removed by Baker, the locomotive was actually in the possession of Schoonmaker at his warehouse. If such was the case, then section 43, subdivision 3 of the Sale of Goods act does apply and, if Schoonmaker had notice of the sale, Peelle Company is "regarded as having received delivery from the time when such third person [bailee] first had notice of the sale." Moreover, the evidence tended to show that Baker did not exercise any domination or control over the locomotive from December 7th, 1934, when he sold it to Peelle Company, until March 9th, 1935, when he removed it, but on the contrary he made arrangements with Schoonmaker for Peelle Company to exercise domination and control by making extensive repairs; that Baker told Schoonmaker of the sale; that he asked Peelle Company to pay him $25 for storage charges that had accrued while the repairs were being made. Furthermore the inference was certainly permissible that Peelle Company in making repairs took and accepted possession (23 *R. C. L.* 1436, § 259), since no warehouse receipt for the locomotive was ever issued by Schoonmaker, and therefore there was no document to be transferred or handed over. By oral agreement, Baker, before the sale, had stored the locomotive with Schoonmaker. The evidence tended to show, as stated, that Baker orally told Schoonmaker of the sale, in other words, that the locomotive belonged to Peelle Company; that the latter, shortly before the removal by Baker, exhibited its bill of sale to Kirk, Schoonmaker's manager, and demanded the right to remove and transport the locomotive themselves; that Schoonmaker did not deny their right but asked that they get an order from Baker so he would not get mixed up in any trouble.

Now in *Beatty* v. *Parsons (Del.)*, 80 *Atl. Rep.* 1063, a replevin action involving a statute somewhat similar to section 43, subdivision 3 of the Sale of Goods act, the court said: "When property in action is in the hands of a bailee and is sold by the owner, delivery may be made either by the order of the vendor upon his bailee to deliver the same to the vendee, or by an order of the vendee himself upon the bailee, thereby making the bailee of the vendor the bailee of the vendee." See, also, 24 *R. C. L.* 61, § 327.

The appellant stresses the fact that the bill of sale called for delivery by Baker to Peelle Company in New York City. But we think that fact immaterial, because it was open to the jury to find that the buyer (plaintiff) was regarded as having received delivery from the time when Schoonmaker, the third person (bailee) first had notice of the sale, as provided by section 43, subdivision 3 of the Sale of Goods act; and also that there was effected, as the jury could find, a change in the original contract, when Baker accepted the check for $150 on March 1st, 1935, in final settlement with the understanding that the sum of $135 was held to cover the cost of transporting the locomotive to New York City, thus creating a new contract regarding delivery and transportation; and this was done before the removal and before the defendant could have had any possible legal interest in the chattel.

Now the rule is that the time, manner or place of delivery mentioned in a written contract of sale of a chattel may be changed by a subsequent oral agreement. *Walker* v. *Johnson,* 96 *U. S.* 424; *Hunt* v. *Thurman,* 15 *Vt.* 336; 40 *Am. Dec.* 683. See, also, section 19 of Sale of Goods act.

We have seen that the evidence, though in dispute, tended to show that not only the title, but the right and fact of possession was in the plaintiff, and that Schoonmaker, the third person, had notice of the sale to the plaintiff, and if so, section 43 of the Sale of Goods act applied; and the evidence tended to show that Baker, the seller, did not have such possession at the time of the removal, and the evidence permitted of the inference, if the jury saw fit to draw it, that the defendant, to whom Baker transferred the locomotive, was not a purchaser in good faith and without notice of the previous sale, and if that was so, section 25 of the Sale of Goods act did not apply. The record shows that the trial judge recognized the situation and carefully and rightly submitted the pertinent questions to the jury. It follows, of course, that the motion for a direction of a verdict for the defendant, grounded upon the question of possession, was properly denied.

The judgment will be affirmed, with costs.